UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CLAYTON C. SWAN,

              Plaintiff,           6:18-cv-06293-MAT

      -v-                         **DECISION AND ORDER**

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.
_____

## INTRODUCTION

Clayton C. Swan ("Plaintiff"), represented by counsel, brings this action under Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner" or "Defendant") denying his application for Disability Insurance Benefits ("DIB"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion is denied, and Defendant's motion is granted.

## PROCEDURAL BACKGROUND

On September 1, 2015, Plaintiff protectively filed an application for DIB, alleging disability as of November 1, 2014, due to acid reflux, edema in both legs, blindness in the left eye, and a hernia. Administrative Transcript ("T.") 62-63. The

claim was initially denied on November 6, 2015. T. 77-87. At Plaintiff's request, a hearing was conducted on January 11, 2017, in Rochester, New York by administrative law judge ("ALJ") Paul Greenberg. Plaintiff appeared with his attorney and testified. A vocational expert ("VE") also testified. T. 29-61. The ALJ issued an unfavorable decision on April 7, 2017. T. 11-25. Plaintiff appealed the decision to the Appeals Council, which denied Plaintiff's request for review on February 16, 2018, making the ALJ's decision the final decision of the Commissioner. T. 1-5. This action followed.

## THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* 20 C.F.R. § 404.1520(a). Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2018. T. 16.

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 1, 2014, the alleged onset date. *Id*.

At step two, the ALJ determined that Plaintiff had the following "severe" impairments: idiopathic peripheral neuropathy, diabetes type II, obesity, and vision impairment. *Id*. The ALJ also noted Plaintiff's diagnoses of umbilical and ventral hernia, hypertension, gout, GERD, and severe obstructive sleep apnea.

However, the ALJ determined there was no evidence in the record that these impairments caused more than minimal limitations on Plaintiff's ability to perform basic work activities and thus were all nonsevere. T. 16-17.

At step three, the ALJ found that Plaintiff's impairments did not singularly or in combination meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. T. 17. The ALJ specifically considered Listings 2.00 (Special Senses and Speech), 9.00 (Endocrine Disorders), and 11.00 (Neurological Disorders).

Before proceeding to step four, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with the following additional limitations: can occasionally climb ramps and stairs, kneel, crouch, and crawl; cannot perform work climbing ladders, ropes, and scaffolds; must avoid concentrated exposure to vibrations, as well as work around unprotected heights or moving mechanical parts; can operate motorized equipment as part of a job, but cannot operate motor vehicles on public roads as part of his work; must be able to sit for 5 minutes after standing for 25 minutes, or stand for 5 minutes after sitting for 25 minutes, but can continue working in either position. T. 17.

At step four, the ALJ relied on the VE's testimony to find that Plaintiff was capable of performing his past relevant work as a CAD designer. T. 20. The ALJ accordingly found that Plaintiff was not disabled as defined in the Act. *Id*.

## SCOPE OF REVIEW

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. *See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v.*

*Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

**DISCUSSION**

Plaintiff contends that remand is warranted for the following reasons: (1) the ALJ failed to properly evaluate Listing 11.14B at step three, resulting in a finding not supported by substantial evidence; (2) the ALJ's RFC is unsupported by substantial evidence; (3) the ALJ erred in rejecting the opinion of Plaintiff's treating source by failing to give good reasons, as required by the treating physician rule; (4) the ALJ erred in assigning limited weight to a portion of the consultative examiner's opinion, based on his own lay opinion; (5) the ALJ failed at step four to properly evaluate whether Plaintiff was capable of performing his past relevant work; and (6) the ALJ failed to properly evaluate Plaintiff's past relevant work in comparison to the Dictionary of Occupational Titles. For the reasons set forth below, the Court finds Plaintiff's arguments without merit and affirms the Commissioner's final determination.

## I. The ALJ Properly Evaluated the Medical Opinions of Record (Plaintiff's Points III and IV)

Plaintiff argues the ALJ erred in rejecting the opinion of Plaintiff's treating neurologist, Dr. Philip D. Vitticore and further erred in rejecting a portion of the opinion of

consultative examiner, Dr. Harbinder Toor. For the reasons set forth below, the Court finds these arguments lack merit.

## A. The ALJ Properly Evaluated the Opinion of Treating Neurologist Dr. Philip D. Vitticore

The ALJ provided a thorough summary of Dr. Vitticore's treatment notes in his decision. *See* T. 18-19. Plaintiff's first appointment with Dr. Vitticore was on June 19, 2015. A neurological examination performed that day showed Plaintiff had minimal distal reaction to touch and vibration, and an independent gait. The EMG study showed evidence of sensory motor polyneuropathy. The ALJ noted that Dr. Vitticore diagnosed Plaintiff with idiopathic peripheral neuropathy and diabetes type II and prescribed gabapentin. T. 18. At a follow up visit on July 17, 2015, Plaintiff reported the gabapentin was helping to somewhat alleviate his pain and Dr. Vitticore increased the dosage. T. 18-19. The ALJ noted that Plaintiff failed to follow up with Dr. Vitticore in four months, as advised. Instead, Plaintiff returned the following year, on May 9, 2016, and Dr. Vitticore noted that Plaintiff was not taking the gabapentin as prescribed because "he generally doesn't like taking meds." T. 19 *referring to* T. 278. The ALJ noted that Plaintiff's neurological exam was unremarkable and Dr. Vitticore prescribed a FLEX-IT trial and bilateral stockings. *Id.*

On December 7, 2016, Dr. Vitticore completed a treating source statement. T. 343-46. Dr. Vitticore stated he had treated Plaintiff a total of three times between June 2015 and May 2016. He also noted that no future appointments were scheduled. Dr. Vitticore stated he treated Plaintiff for neuropathy and that to the best of his knowledge, Plaintiff's symptoms began around 2014. T. 343. Dr. Vitticore opined Plaintiff was able to sit for eight hours during a workday and would require the option to sit or stand atwill. He wrote "unknown" for Plaintiff's ability to stand and walk during an eight-hour workday. Dr. Vitticore opined Plaintiff did not need a cane or other assistive device to ambulate effectively. T. 344. He opined Plaintiff had no known impairments in his hands and was able to occasionally use his feet for foot controls. T. 345. Dr. Vitticore noted that Plaintiff had abnormal EMG and nerve conduction testing and reported significant symptoms. Dr. Vitticore further noted that Plaintiff had no known impairments relating to postural activities or environmental limitations. T. 345-46. He also opined that Plaintiff's symptoms would likely cause him to be "off task" more than twenty-five percent of a typical workday and that Plaintiff would likely be absent from work more than four days per month due to his impairments or treatment. T. 343.

In his decision, the ALJ gave "little" weight to Dr. Vitticore's opinion. The ALJ noted that Dr. Vitticore's

opinion was in the form of a "checklist-type" statement with no narrative explaining the severe functional limitations. T. 20. He further noted that Dr. Vitticore treated Plaintiff a total of three times, with no further treatment scheduled, and thus, it appeared his treating relationship with Plaintiff was limited. *Id.*

Plaintiff argues the ALJ's decision to afford "little" weight to Dr. Vitticore's opinion was erroneous and not supported by substantial evidence. In particular, Plaintiff contends that the ALJ failed to provide "good reasons" for rejecting Dr. Vitticore's opinion, in accordance with the "treating physician rule." The Court disagrees.

Under the Commissioner's regulations in place at the time the ALJ issued his decision, a treating physician's opinion is generally entitled to controlling weight where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and where it is not inconsistent with the other substantial evidence of record. *See Green-Younger*, 335 F.3d at 106. If an ALJ assigns less than controlling weight to a treating physician's opinion because it does not meet this standard, the ALJ must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004). When determining what weight to afford a treating physician's

opinion, the ALJ is required to consider "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks, alterations, and citations omitted). However, the ALJ need not expressly discuss each of these factors, so long as his "reasoning and adherence to the regulation are clear." *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citing *Halloran v. Barnhart*, 362 F.3d 28, 31–32 (2d Cir. 2004)).

The record indicates Plaintiff was treated by Dr. Vitticore a total of three times. In his decision, the ALJ discussed all three of these treatment appointments, along with the corresponding examination and diagnostic findings. *See* T. 18-19. The ALJ found that these notes and findings, along with other objective medical evidence in the record, were not consistent with Plaintiff's allegations of the severity of his symptoms of diabetic neuropathy and obesity. T. 18.

The ALJ assigned "little" weight to Dr. Vitticore's opinion that Plaintiff would likely be "off task" more than twenty-five percent of the workday and would likely be absent from work more

than four days per month due to his impairments. He reasoned that Dr. Vitticore provided no narrative in the "checklist-type form" to explain such severe functional limitations. T. 20. Plaintiff argues that including a narrative was unnecessary because Dr. Vitticore's treatment notes were available. However, this argument is unavailing because, as noted above, the ALJ found Dr. Vitticore's treatment notes did not substantiate the severity of symptoms and limitations Plaintiff had alleged. Furthermore, where a treating physician's opinion is "not particularly informative" and is inconsistent with other evidence in the record, it "does not sustain controlling weight." *Halloran*, 362 F.3d at 32.

The ALJ further noted that Plaintiff had seen Dr. Vitticore only three times prior to Dr. Vitticore giving his opinion. T. 20. As Plaintiff points out, "there is no arbitrary, minimum period of treatment by a physician" before he or she is able to obtain a longitudinal picture of an alleged impairment to warrant controlling weight under the Regulations. *Wilson v. Colvin*, 213 F. Supp.3d 478, 484 (W.D.N.Y. 2016) (citing 20 C.F.R. § 404.1527(c)(2)(i) (internal quotation marks omitted)). Instead, an ALJ should "focus on the nature of the ongoing physician-treatment relationship, rather than its length." *Id.* (quoting *Simmons v. U.S.R.R. Ret. Bd.*, 982 F.2d 49, 55 (2d Cir. 1992)). Here, the ALJ did just that, noting that Dr. Vitticore pointed

out in his opinion that he had examined Plaintiff only three times over the course of a year and that no further treatment had been scheduled. T. 20 *referring to* T. 343. The ALJ permissibly found that Dr. Vitticore's treating relationship with Plaintiff appeared to be limited. *See Feliciano v. Berryhill*, No. 6:16-cv-06311(MAT), 2017 WL 3537130, at *3 (W.D.N.Y. Aug. 17, 2017) (finding that ALJ properly applied the regulation's express instructions to consider "the length of the treatment relationship and the frequency of examination and the nature and extent of the treatment relationship" in determining the opinion of plaintiff's psychiatrist was entitled to "little" weight where the opinion was issued after only two visits and the doctor merely checked off boxes and provided little narrative) (citing 20 C.F.R. § 404.1527(c)(2)(i) (internal quotation marks omitted)).

Based on the foregoing, the Court finds the ALJ properly evaluated Dr. Vitticore's opinion in relation to the record evidence as a whole and provided "good reasons" for assigning it less than controlling weight. Accordingly, the Court finds remand on this basis is not warranted.

### B.    The ALJ Properly Evaluated the Opinion of Consultative Examiner Dr. Harbinder Toor

On October 27, 2015, Dr. Harbinder Toor conducted a consultative examination of Plaintiff. T. 260-64. Plaintiff

reported that he had a history of diabetes since 2014, but he did not check his blood sugar. Plaintiff also reported vision loss in his left eye since 1996; a history of stroke in 1996; blurred vision in his right eye; a history of acid reflux; sleep apnea; a history of being overweight for many years; an abdominal hernia for a few years; a history of diabetic neuropathy in the feet and lower part of his legs, more marked on the right than the left; a history of sleep difficulty; and hypertension since 2015. T. 260-61.

Plaintiff reported he cooks and cleans daily; showers, bathes, and dresses daily; and does laundry and goes shopping once per week. T. 261. He reported he watches TV, listens to the radio, reads, socializes with friends, and his hobbies include the computer and video games. *Id.*

Upon examination, Plaintiff's vision in his right eye was 20/25, his left eye was 20/0, and together was 20/25 on a Snellen chart at 20 feet with glasses. He appeared to be in no distress and walked with a normal gait. He used no assistive devices and needed no help changing for the exam. Heel to toe walking was difficult and Plaintiff's squat was twenty percent of full. *Id.* Plaintiff's eyes showed clear conjunctivae and normal fundi. Plaintiff had tenderness with a small bulging hernia close to the umbilical area. His bowel sounds were normal and there were no hepatosplenomegaly or masses. Plaintiff's cervical spine showed

full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. Plaintiff's lumbar spine had forward flexion of thirty degrees, extension of zero degrees, and full lateral flexion and bilateral rotation. Plaintiff's straight leg raising tests were negative bilaterally in both the sitting and supine positions. He had a full range of motion in both upper and lower extremities. His joints were stable and nontender. T. 262. Plaintiff's deep tendon reflexes were physiologic and equal in his upper and lower extremities. He had tingling and numbness in the lower part of his legs and feet bilaterally. He had tingling and numbness in his hands bilaterally, but his strength was 5/5 in both his upper and lower extremities. T. 263. Plaintiff had tenderness and mild pitting-type edema in his legs and feet bilaterally. There was no evident muscle atrophy. Plaintiff's grip strength was 4/5 bilaterally and he had mild difficulty grasping, holding, writing, tying shoe laces, zipping a zipper, buttoning a button, manipulating a coin, and holding objects. *Id*.

Dr. Toor opined that Plaintiff had moderate to marked limitations walking and standing a long time and bending or lifting. He further opined that Plaintiff had moderate limitation doing routines requiring fine visual acuity, and a mild limitation for fine motor activities bilaterally. T. 263.

In his decision, the ALJ gave "great" weight to the portion of Dr. Toor's opinion pertaining to Plaintiff's significant

difficulty walking and standing for extended periods. However, the ALJ gave only "limited" weight to the portion of Dr. Toor's opinion that Plaintiff would have moderate limitation performing work requiring fine visual acuity. T. 20. The ALJ reasoned that Plaintiff had lived with vision loss in one eye for an extended period and was able to sustain employment and a full range of activities of daily living, notwithstanding the impairment. *Id*. Furthermore, the ALJ noted that the medical evidence of record indicated sparse treatment for Plaintiff's vision impairment since the alleged onset date, and that Plaintiff regularly drives a car. T. 19.

Plaintiff argues the ALJ erred by using his own lay opinion when giving "limited" weight to the portion of Dr. Toor's opinion relating to Plaintiff's vision. For the reasons set forth below, the Court finds no error with the ALJ's weighing of Dr. Toor's opinion.

An ALJ is permitted to discount portions of a consultative examiner's opinion where it is not supported by the medical evidence of record. *See Christina v. Colvin*, 594 F. App'x 32, 33 (2d Cir. 2015) (ALJ did not commit reversible error "by dismissing a portion of the opinion of [the] consultative examiner"). *See also Walker v. Colvin*, No. 3:15-CV-465 (CFH), 2016 WL 4768806, at *10 (N.D.N.Y. Sept. 13, 2016) ("[A]n ALJ may properly credit those portions of a consultative examiner's

opinion which the ALJ finds supported by substantial evidence of record and reject portions which are not so supported.") (quotation omitted). Furthermore, an ALJ assessing a disability claim is required to "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). The ALJ's finding need "not perfectly correspond with any of the opinions of medical sources." *Id.*; *see also O'Neil v. Colvin*, No. 13-CV-575-JTC, 2014 WL 5500662, at *6 (W.D.N.Y. Oct. 30, 2014) ("the ALJ's finding need not track any one medical opinion"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopt*ed, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

The Court finds no error in the ALJ's decision to credit portions of Dr. Toor's opinion that were supported with substantial evidence from the record, while discounting portions that were inconsistent with the record. Comparing the record as a whole to Dr. Toor's opinion, the ALJ considered Plaintiff's testimony that he is able to stand for thirty minutes at a time, but then must sit down and that he can walk for about thirty minutes at a time. *See* T. 18. The ALJ also noted Dr. Vitticore's treatment notes indicating Plaintiff had idiopathic peripheral

neuropathy and that he received some relief of pain from gabapentin. T. 18-19. This evidence of record supports the ALJ's decision to fully credit Dr. Toor's opinion regarding Plaintiff's limited ability to stand and walk for long periods of time. Conversely, Dr. Toor's opinion regarding the impact of Plaintiff's vision on his ability to perform work requiring fine visual acuity is not supported by substantial evidence of record, as the ALJ noted. The Court notes that Plaintiff reported to Dr. Toor he had vision loss in his left eye since 1996. T. 260. Despite this vision loss, Plaintiff testified he did CAD (computer aided design) work for a company between 2002 and 2004, which involved working at a desk computer. T. 43. Furthermore, as the ALJ noted, Plaintiff has received sparse treatment for his vision impairment during the relevant period and continues to perform a full range of activities of daily living that include driving, watching TV, playing video games and being on his computer. T. 19-20. The Court finds the ALJ adequately supported his decision to discount a portion of Dr. Toor's opinion. *See Christina*, 594 F. App'x at 33. Accordingly, remand is not warranted on this basis.

**II. The ALJ's Step Three Finding Is Supported by Substantial Evidence (Plaintiff's Point I)**

Plaintiff argues the ALJ failed to properly evaluate Listing 11.14B at step three, resulting in a finding not supported by

substantial evidence. In particular, Plaintiff argues that (1) the ALJ failed to properly synthesize evidence that supports a finding that Plaintiff meets Listing 11.14B; and (2) the ALJ failed to properly develop the record by obtaining an expert opinion as to whether Plaintiff meets Listing 11.14B. For the reasons set forth below, the Court finds these arguments lack merit.

At step three of the sequential analysis, an ALJ determines whether any of the claimant's medically determinable "severe" impairments singularly or in combination meet or medically equal the criteria of an impairment listing in 20 C.F.R. Part 404, Subpart P, Appendix 1 . If any impairment is of a severity to meet or medically equal the criteria of a listing and also meets the durational requirement set forth in 20 C.F.R. § 404.1509, the claimant is disabled and the analysis is concluded. A claimant has the burden of proving his or her impairments meet or medically equal the requirements of a particular listing. *See Johnson v. Colvin*, No. 13-CV-1055-JTC, 2014 WL 6883606, at *5 (W.D.N.Y. Dec. 4, 2014) (citing *Naegele v. Barnhart*, 433 F. Supp.2d 319, 324 (W.D.N.Y. 2006) ("It must be remembered that plaintiff has the burden of proof at step 3 that she meets the Listing requirements.")). An impairment that does not meet *all* of the specified medical criteria of a listing does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

To establish peripheral neuropathy disability pursuant to Listing 11.14B, the claimant has the burden of proving:

> Marked limitation (see 11.00G2) in physical functioning (see 11.00G3a), and in one of the following:
>
> 1. Understanding, remembering, or applying information (see 11.00G3b(i)); or
>
> 2. Interacting with others (see 11.00G3b(ii)); or
>
> 3. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
>
> 4. Adapting or managing oneself (see 11.00G3b(iv)).

20 C.F.R. Part 404, Subpart P, Appendix 1 § 11.14. "Marked limitation means that, due to the signs and symptoms of your neurological disorder, you are seriously limited in the ability to independently initiate, sustain, and complete work-related physical activities." *Id.* § 11.00(G)(2)(a).

Plaintiff contends he meets the criteria for Listing 11.14B because: (1) he has been repeatedly diagnosed with neuropathy; (2) Dr. Toor specifically opined he has moderate to marked limitations walking and standing a long time, and bending and lifting; and (3) Dr. Vitticore opined Plaintiff's neuropathy symptoms were severe enough to interfere with his attention and concentration, likely causing him to be "off task" more than twenty-five percent of a typical workday. *See* T. 263, 343. The

Court acknowledges that if the opinion of Dr. Vitticore was given controlling weight, it would appear Plaintiff does meet the criteria of Listing 11.14B in that he can show marked limitation in his ability to stand and walk for a long period of time (part 1 of the Listing) as well as a marked limitation in concentration, persisting, or maintaining pace (part 2 of the Listing). However, as discussed in detail above, the ALJ permissibly determined that Dr. Vitticore's opinion was not supported by substantial evidence and thus, was not entitled to controlling weight. Accordingly, Plaintiff has not demonstrated he meets both requirement prongs of the Listing. The Regulations define concentrating, persisting, or maintaining pace as the ability to "focus attention on work activities and to stay on-task at a sustained rate." 20 C.F.R. § 404, Subpt. P, App. 1, § 11.00(G)(3)(b)(iii). The Court finds that substantial evidence of record demonstrates Plaintiff has minimal, if any limitations in concentrating, persisting, or maintaining pace. In the function report Plaintiff completed as part of his initial application for benefits, he stated he is able to finish what he starts, though he takes his time, and that he is able to follow written and spoken instructions. T. 207-08. Plaintiff testified he plays video games, does housework, watches television, looks at the internet and emails on his computer, and cooks meals. T. 49-50, 201. He further testified that when he feels pain and

tenderness in his feet and lower legs, he sits down. T. 49. In treatment notes, Dr. Vitticore noted Plaintiff was alert and attentive. *See, e.g.,* T. 240, 242. Plaintiff has offered no additional evidence supporting the contention that he meets the second set of criteria of Listing 11.14B. Accordingly, the Court finds Plaintiff has not provided the evidence necessary to support the finding his limitations meet or medically equal all of the criteria of Listing 11.14B.

Plaintiff also argues the ALJ should have further developed the record with testimony from a medical expert regarding Plaintiff's neuropathy to establish whether or not Plaintiff meets Listing 11.14B. The Court disagrees.

It is well settled than an ALJ has an affirmative duty to develop the medical record or seek additional information where the evidence of record is inconsistent or contradictory, or where an evidentiary gap exists. *See, e.g.*, *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). However, where there are no obvious gaps, and the record presents a "complete medical history," an ALJ is not under a duty to seek additional evidence or information before rejecting a claim. *Id*. at 79, n. 5 (citing *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996). Furthermore, as noted above, the claimant carries the burden of supplying evidence at step three showing that the requirements of a particular listing have been met or medically equaled. An ALJ "may . . . ask for and

consider opinions from medical experts on the nature and severity of [a claimant's] impairment(s) and on whether [the] impairment(s) equals the requirements of any impairment" in the Listings. 20 C.F.R. § 404.1527(f)(2)(iii). However, this is an option available to the ALJ, and not a mandate. *See Carter v. Commissioner of Social Security*, No. 06-CV-186C(F), 2008 WL 1995122, at *5 (W.D.N.Y. May 6, 2008).

At step three, the ALJ found that "the medical evidence falls short of the criteria of [§ 11.00 Neurological Disorders], and no medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination." T. 17. Throughout his decision, the ALJ noted medical findings, treatment notes, and Plaintiff's testimony that supported this finding. *See* T. 17-19. Contrary to Plaintiff's assertion, there was no "gap" in the record simply because the record did not support the finding that Plaintiff's impairments meet Listing 11.14B. Furthermore, Plaintiff has otherwise failed to identify any information to suggest additional expert testimony might have led the ALJ to reach a different conclusion. Accordingly, the Court finds the ALJ was under no duty to further develop the record or obtain the opinion of a medical expert before making his step three finding. *See Ortiz v. Colvin*, No. 13-CV-6463(MAT), 2014 WL 3784108 at *7 (W.D.N.Y. July 31, 2014) (ALJ did not abuse his discretion by failing to consult a

medical expert to determine whether plaintiff's impairments met or medically equaled the Listings). The Court therefore finds remand is not warranted on this basis.

## III. The RFC Finding Is Supported by Substantial Evidence (Plaintiff's Point II)

Plaintiff also argues the ALJ created a highly specific RFC finding that is unsupported by substantial evidence. In particular, Plaintiff argues there is no evidence of record to support the specific sit/stand limitations assessed by the ALJ. For the reasons set forth below, the Court finds this argument lacks merit.

As previously noted, an ALJ is required to "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta*, 508 F. App'x at 56. Furthermore, where an ALJ makes an RFC assessment that is more restrictive than the medical opinions of record, it is generally not a basis for remand. *See Castle v. Colvin*, No. 1:15-CV-00113(MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (finding that "the fact that the ALJ's RFC assessment did not perfectly match Dr. Balderman's opinion, and was in fact more restrictive than that opinion, is not grounds for remand"); *Savage v. Comm'r of Soc. Sec.*, No. 2:13-CV-85, 2014 WL 690250, at *7 (D. Vt. Feb. 24, 2014) (finding no harm to claimant where ALJ

adopted an RFC determination that was more restrictive than medical source's opinion).

Based on the record as a whole, the ALJ found that Plaintiff was capable of sedentary work with several additional limitations, including the option to sit for five minutes after standing for twenty-five minutes, or stand for five minutes after sitting for twenty-five minutes. *See* T. 17. According to the Regulations, sedentary work "involves sitting, [although] a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

The Court finds the portion of the RFC with which Plaintiff takes issue is appropriately supported by both Dr. Toor's opinion that Plaintiff "has moderate to marked limitations walking and standing for a long time," (T. 263) and Plaintiff's testimony that he can stand or walk for thirty minutes at a time before needing to sit down (T. 44, 47). The ALJ assigned "great" weight to Dr. Toor's opinion regarding Plaintiff's exertional limitations. T. 20. And Plaintiff's own testimony provides additional support for the ALJ's findings that he requires the option to change positions after twenty-five minutes. Furthermore, Dr. Vitticore opined Plaintiff was capable of sitting for eight hours with the ability to sit or stand at will

and also stated Plaintiff's standing and walking limitations were "unknown." T. 344.

In light of Plaintiff's testimony and the medical evidence described above, Plaintiff's argument that the ALJ's inclusion of a sit/stand option in the RFC was reversible error lacks merit. *See Jackson v. Berryhill*, No. 16-CV-33(MAT), 2018 WL 2235166, at *3 (W.D.N.Y. May 15, 2018) (consultative examiner's opinion and plaintiff's testimony provided substantial evidence to support the sit/stand option in the RFC finding). Accordingly, the Court finds remand is not warranted on this basis.

## IV. The ALJ Properly Evaluated Plaintiff's Past Relevant Work (Plaintiff's Points V and VI)

Plaintiff further contends the ALJ failed at step four to properly evaluate whether Plaintiff is capable of performing his past relevant work as a CAD designer, and further erred by failing to evaluate the position as a composite job. The Court finds these arguments are without merit, for the reasons set forth below.

### A. The ALJ's Step Four Finding Is Supported by Substantial Evidence

At step four, the ALJ found that Plaintiff was capable of performing his past relevant work as a CAD designer, as it is generally performed in the national economy. T. 20-21. Plaintiff argues the ALJ did not properly evaluate or secure evidence establishing that Plaintiff could perform the physical and visual

demands of a CAD designer. Specifically, Plaintiff contends that the ALJ failed to address how Plaintiff's vision loss in his left eye and blurriness in his right eye would allow him to perform the visually demanding duties of a CAD designer. The Court disagrees.

Plaintiff reported to Dr. Toor that he lost vision in his left eye in 1996. T. 260. At the hearing, Plaintiff testified that he recently started wearing glasses to see and read, and that the glasses corrected the vision changes in his right eye. T. 46. Plaintiff also testified he worked as a CAD designer from 2002 through 2004 and was a delivery driver in 2004 - both positions held after he lost vision in his left eye in 1996. T. 41-43. Furthermore, Plaintiff testified he is able to use a computer. T. 38.

The VE classified the position of CAD drafter, as generally performed, as a skilled sedentary position, pursuant to the Dictionary of Occupational Titles ("DOT"). T. 54. The VE further testified that a hypothetical individual with Plaintiff's RFC would be able to perform work as a CAD designer, as generally performed, but not as Plaintiff had actually performed it. T. 56. Specifically, the VE noted that the occasional on-site and delivery duties that Plaintiff said he did in his role as a CAD designer eliminated the position as it was actually performed. T. 57. The VE further testified that job duties would vary by

employer, but that the general title of CAD designer was considered a (sedentary) desk job that fell within Plaintiff's RFC. T. 57-58.

As an initial point, the Court notes it is Plaintiff's burden to show he was unable to perform his past relevant work, both as he had performed it and as it is generally performed in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(f), 404.1560(b); *see also Jasinksi v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003) (holding that at step four, "the claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally") (citations omitted).

While the VE's testimony supports the finding that Plaintiff would be unable to perform his past work as a CAD designer as he actually performed it, Plaintiff has not demonstrated that he is unable to perform the work as generally performed in the national economy. Furthermore, in addition to the VE's testimony that Plaintiff would be able to perform the work as a CAD designer, as generally performed, the record as a whole supports the ALJ's step four finding. The ALJ noted that Plaintiff's vision loss is longstanding and that he worked as a CAD designer after losing vision in his left eye. T. 18. Moreover, the ALJ noted that despite needing glasses to correct blurriness in his right eye, Plaintiff continues to drive, and that he sustains a full range

of activities of daily living, which include using a computer, watching television, and playing video games. T. 19-20. Accordingly, the Court finds the ALJ properly evaluated the requirements of Plaintiff's past work, as a CAD designer in finding that Plaintiff has the ability to perform those requirements as generally performed in the national economy.

**B.    Substantial Evidence Does Not Support a Finding that Plaintiff's Past Relevant Work as a CAD Designer Was a Composite Job**

Plaintiff further argues the ALJ erred by not finding Plaintiff's past relevant work as a CAD designer was a composite job. For the reasons set forth below, the Court finds this argument lacks merit.

Social Security Ruling ("SSR") 82-61 defines composite jobs as those which have "significant elements of two or more occupations and, as such, have no counterpart in the DOT." SSR 82-61, 1982 WL 31387, at *2 (S.S.A. Jan. 1, 1982). The Social Security Administration's Program Operations Manual System (POMS) states "[t]he claimant's [past relevant work] may be a composite job if it takes multiple DOT occupations to locate the main duties of the [past relevant work] as described by the claimant." POMS DI 25005.020. Therefore, Plaintiff carries the burden at step four to demonstrate he is unable to perform his past relevant work, as actually performed or as generally performed.

*See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(f), 404.1560(b).

Plaintiff testified that as a CAD designer, he occasionally would go on site to perform field measurements or make deliveries. T. 43-44. The VE testified that Plaintiff would be unable to return to his position as a CAD designer as he actually performed it. The VE acknowledged that specific job duties will vary by employer, however variations in the performance of certain duties do not rise to the level of a composite job. T. 57-58. *See Weiser v. Berryhill*, No. 1:16-CV-00763(MAT), 2018 WL 6011163, at *3 (W.D.N.Y. Nov. 16, 2018) ("the main duties of a composite job will only be adequately described by multiple DOT occupations") (internal citation and quotation marks omitted). Plaintiff's past relevant work as a CAD designer, as actually performed did not rise to the level of a composite job simply because he occasionally performed field measurements on site or made deliveries. The VE determined that Plaintiff's past relevant work was light work; however, as generally performed, a CAD designer's work is sedentary work. The VE determined that as Plaintiff performed it, his past relevant work was light work; however, as generally performed, a CAD designer position is sedentary work. T. 55-57. Accordingly, the Court finds the ALJ's step four finding that Plaintiff was capable of performing his past relevant work as a CAD designer as generally performed was

supported by substantial evidence and further finds that remand is not warranted.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Docket No. 9) is denied and the Commissioner's motion for judgment on the pleadings (Docket No. 13) is granted. The Clerk of Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca
_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:     April 30, 2019
           Rochester, New York